Christopher R. Houk, State Bar No. 20843
**GILLESPIE, SHIELDS, DURRANT & GOLDFARB**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Facsimile:  (602) 870-9783
chouk@gillaw.com

Send all Court Documents to:
mailroom@gillaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny G. Mack, | |
|          Plaintiff, | Case No: |
| v. | |
| Town of Pinetop Lakeside, a municipal corporation; David Davis and Jane Doe Davis, husband and wife; Kenneth Matthew Patterson and Jane Doe Patterson, husband and wife; Evelyn Racette and John Doe Racette, wife and husband;  Greg Smith and Jane Doe Smith, husband and wife, | **CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** |
|          Defendants. | |

Plaintiff Johnny G. Mack, by and through Christopher R. Houk, for the law firm of Gillespie, Shields, Durrant & Goldfarb, his undersigned attorney of record, submits this Complaint for relief against the Defendants and Jury Trial Demand pursuant to Federal Rules of Civil Procedure 3, 7(a)1, 8(a), and 38(a, b).  This case involves the City of Pinetop approving the placement of a snake in Mack's work truck causing him to suffer a heart attack.

**Plaintiff's Five Claims**

1. 42 U.S.C. § 1981 hostile environment in employment contract performance based upon race by the Town, its Public Works Director, and Davis (and their respective spouses);

2. 42 U.S.C. § 1981 retaliation for having reported hostile environment in employment contract performance based upon race by the Town, its Mayor, its former Town Manager, its Public Works Director, and Davis (and theirTOWN respective spouses);

3. 42 U.S.C. § 1983 retaliation for exercise of First Amendment right of free speech by the Town, its Mayor, and former Town Manager (and their respective spouses);

4. 42 U.S.C. § 1983 retaliation for exercise of First Amendment right of free speech by the Town, its Public Works Director, and Davis (and their respective spouses);

5. Intentional Infliction of Emotional Distress (a state law intentional tort claim) (based upon the snake incident) by the Town.

6. Note: Plaintiff Mack may seek leave to amend this Complaint pursuant to Federal Rule of Procedure 15(a) to add additional federal statutory claims after he has received a notice of right to sue from the EEOC on his pending EEOC charge which is attached as Exhibit 2 infra. At this time, Mack has not yet exhaustive his administrative remedies on this EEOC charge.

**The Parties, Jurisdiction, and Claims**

7. The Plaintiff, Johnny G. Mack is, and has been at all times relevant to this Complaint:

   A. an adult resident of Navajo County, Arizona, and citizen of the United States of America; and

   B. employed by Defendant Town of Pinetop Lakeside in its Public Works Department; and

   C. a person whose race is African-American; and

   D. married to a Native American (Indian) woman.

8. Defendant Town of Pinetop Lakeside (Town) is, and has been at all times relevant to this Complaint:

    A. an Arizona municipal corporation and a body politic, established and operating pursuant to the Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes; and

    B. located entirely within Navajo County, Arizona; and

    C. the employer of Mack; and

    D. acting under color of state law, namely Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes; and

    E. the employer of fifteen or more persons.

9. Defendant David Davis is, and has been at all times relevant to this Complaint:

    A. an adult resident of Navajo County, Arizona; and

    B. employed by the Town in its Public Works Department; and

    C. acting on behalf of the Town as its employee; and

    D. acting under color of state law, namely Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes; and

    E. upon information and belief, married and acting on behalf of the marital community of his spouse and himself; the true name of his wife is unknown to Mack at this time and Mack will seek leave to amend this Complaint pursuant to Federal Rule of Procedure 15(a) to state her true name once it becomes known to him.

10. Defendant Kenneth Matthew Patterson is, and has been at all times relevant to this Complaint:

    A. an adult resident of Navajo County, Arizona; and

    B. employed by the Town as the Director of its Public Works Department; and

    C. acting on behalf of the Town as its employee; and

  D. acting under color of state law, namely Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes; and

  E. upon information and belief, married and acting on behalf of the marital community of his spouse and himself; the true name of his wife is unknown to Mack at this time and Mack will seek leave to amend this Complaint pursuant to Federal Rules of Civil Procedure 15(a) to state her true name once it becomes known to him.

11. Defendant Evelyn Racette was at all times relevant to this Complaint:

  A. an adult resident of Navajo County, Arizona; and

  B. employed by the Town as the Town Manager; and

  C. acting on behalf of the Town as its employee; and

  D. acting under color of state law, namely Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes; and

  E. upon information and belief, married and acting on behalf of the marital community of her spouse and herself; the true name of her husband is unknown to Mack at this time and Mack will seek leave to amend this Complaint pursuant to Federal Rule of Procedure 15(a) to state his true name once it becomes known to him.

12. Defendant Greg Smith is, and has been at all times relevant to this Complaint:

  A. an adult resident of Navajo County, Arizona; and

  B. the Mayor of the Town; and

  C. acting on behalf of the Town as its Mayor; and

  D. acting under color of state law, namely Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes; and

  E. upon information and belief, married and acting on behalf of the marital community of his spouse and himself; the true name of his wife is unknown to Mack at this time and Mack will seek leave to amend this Complaint pursuant to Federal Rule of Procedure 15(a) to state her true name once it becomes known to him.

13. Mack seeks relief for counts one through four which all arise from federal statutes. This Court therefore has original jurisdiction pursuant to 28 U.S.C. § 1331, and because of the nature of these statutory claims, pursuant to 28 U.S.C. § 1343(a)(3), (4) as well.

14. Count five seeks relief for an intentional tort claim under Arizona law, based upon some of the same core facts as the four federal law claims, Counts One through Four. This Court has supplemental jurisdiction for this claim pursuant to 28 U.S.C. § 1367.

15. All events alleged occurred in Navajo County, Arizona, and Navajo County is the domicile of all parties.

16. Based upon the foregoing, the United States District Court for the District of Arizona, Prescott Division, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b).

## Fact Allegations in Support of All Counts

17. The Town hired Mack in about 1995, and has been employed continuously by the Town since that time. Through promotions and good job performance, he is currently the Town Public Works Department. Manager.

18. Mack currently supervises a team of about five other Town employees. Mack is skilled at operating heavy equipment, including running a street sweeper.

19. At all times relevant to this Complaint, Mack's immediate superior has been Defendant Kenneth Matthew Patterson, the Town Public Works Director, and Patterson's superior was the Town Manager, Defendant Evelyn Racette.

20. Patterson hired Defendant David Davis to work in the Town Public Works Department. Patterson and Davis went to elementary school and high school together and have been close friends for many years.

21. At all relevant times, Patterson has had the power to control Davis's terms, manner, and means of Town employment by supervising his work, assigning tasks, and having the power to discipline and terminate Davis's employment.

22. In July and August 2015, Patterson authorized Davis (A) to make purchases on behalf of the Public Works Department, (B) schedule work to be done on department equipment such as the crack sealer, and (C) assign tasks to Public Works employees.

23. At all relevant times, Patterson has also had the power to control Mack's terms, manner and means of Town employment by supervising his work, assigning tasks, and having the power to discipline and terminate Mack's employment.

24. In July or August 2015, Patterson used the following derogatory language at work, in Mack's immediate presence:

    A. "Who nigger-rigged this?" Patterson asked while trying to repair a crack sealer machine.

    B. "Don't 'nigger-rig' it," Patterson told Public Work's employee Mike Mettie, on another occasion, referring to fixing a street sweeper.

    C. On yet a third occasion, Patterson referred to Native Americans as "dirty Indians."

25. About a week or two after Patterson spoke this racially derogatory language, Mack complained to the Town Manager Racette. Mack told her that he was offended by Patterson's use of the words "nigger rigging" and "dirty Indians," especially given his race and the race of his wife.

26. About a week or two after Mack's complaint to Racette, in August 2015, Davis placed a snake in the cab of the Town street sweeper used by Mack.

27. It was common knowledge at the Public Works Department that Mack was extremely fearful and uncomfortable around snakes, and Patterson and Davis both well knew that Mack feared snakes. Anytime Mack saw snakes, he would have a negative, visible reaction to them. On at least one occasion, in the presence of others in the Public Works Department, Mack was so disturbed by a snake on the road that he immediately ran it over with his truck.

28. In August 2015, Davis kept a snake in a bucket on the Town premises. He told other Town employees including his supervisor and close friend Patterson that he planned to place the snake in Mack's street sweeper to frighten and upset him.

29. Patterson knew at least a day in advance that Davis planned to place the snake in Mack's work station (the cab of his street sweeper) while it was on Town property.

30. Patterson did not stop Davis (his close friend and subordinate) from planting the snake in Mack's street sweeper and said nothing and did nothing to discourage Davis from placing the snake in Mack's street sweeper. By not stopping Davis, Patterson encouraged and ratified Davis's misconduct.

31. At least one Town co-worker told Davis not to place the snake in Mack's street sweeper, but Davis ignored that request.

32. Davis, unbeknown to Mack, put the snake in Mack's street sweeper. Then Davis asked Mack to retrieve a can of window cleaner from the street sweeper. Mack went to the street sweeper, opened the passenger-side door and reached for the window cleaner on the seat. He did not notice the snake on the seat by the window cleaner. When Mack grabbed the cleaner, he unknowingly took hold of the snake as well. When he realized he was holding the snake along with the can, he yelled out in fright and shock.

33. When Mack yelled out, he heard laughter. Mack looked up and saw both Patterson and Davis laughing. Mack threw the can at Davis, and Davis went into Patterson's office where they continued laughing. Mack felt sharp pain radiating in left arm. The pain was intermittent, not constant. Mack approached Patterson angrily asking him, "What's going on?" Patterson claimed not to know what happened and walked away.

34. Upon information and belief, Patterson never investigated the snake incident nor took any action against Davis for planting the snake in Mack's street sweeper.

35. Davis's conduct in placing the snake inside the cab of Mack's street sweeper and Patterson's ratification of Davis's conduct was motivated by their evil and malicious intent to harm Mack because of their (A) hostility toward Mack for having reported Patterson's racial slurs to the Town Manager the racial slurs, and (B) desire to make Mack's working conditions intolerable so he would quit or retire.

36. Out of breath and dizzy, Mack went to a medical doctor a short time after he grabbed the snake for medical diagnosis and treatment and he underwent various medical

tests. A cardiologist, Ira B. Ehrlich, M.D., later confirmed Mack had suffered a heart attack from shock when he had grabbed the snake. This confirmation is set forth in a report from Dr. Ehrlich dated February 18, 2016. A true copy of Dr. Ehrlich's report is attached infra as Exhibit 1 and incorporated by reference pursuant to Federal Rule of Civil Procedure 10(c).

37. The Town's conduct was extreme and outrageous when Davis placed a snake in Mack's work station with the knowledge and approval of Patterson, causing Mack to have a heart attack. The Town intended to cause or recklessly disregarded the near certainty that such distress would occur because of the conduct.

38. Mack suffered severe emotional distress and had a heart attack as the direct result of the snake incident.

39. Mack soon thereafter reported Patterson's racial statements and the snake incident which he believed was racially motivated and retaliatory in person to Leslee Wessel at her home. Wessel was and is an elected member of Town Council who he has known for years, and she had hired him when she had been employed by the Town. He went to her because his own supervisor, Patterson, was the primary source of the racial hostility and retaliation that Mack was suffering in his workplace, and he was a constituent of hers. Wessel told Mack that his complaint would "have consequences for him."

40. Shortly after Mack complained to Council member Wessel, Town Manager Racette and Mayor Greg Smith called Mack in to meet with them. During the meeting, Racette and Smith (A) threatened his employment by stating that the Town might terminate Mack's employment because he had reported Patterson's racial slurs and the snake incident to Town Council member Wessel, and (B) ordered him not to complain again outside the "chain of command" or to any members of the Town Council about any workplace issues.

41. Two or three days later, Patterson also threatened to terminate Mack's employment because Mack had complained to the Town Manager about him for using racial epithets, and later to the Council Member Wessel about the epithets and the snake incident. Patterson angrily confronted Mack about his complaints telling Mack he had

been "written up" because of Mack's complaint. Patterson then accused Mack of being insubordinate and threatened Mack's to fire Mack because of the way Mack was handling recycling containers. However this was accusation was clearly a pretext because Mack was handling the recycling containers the same way he always had over the years according to his training.

42. Mack responded to Patterson saying "You should have gotten more than a write-up. You should have done your job [by investigating and taking action against Davis because of the snake incident]." Patterson did not respond, and he returned to his truck.

43. On February 18, 2016, Mack filed a charge of discrimination with the EEOC, charge #540-2016-01136, alleging that the Town had engaged in racial discrimination in employment and retaliation against him (for having reported such discrimination). A true copy of that charge is attached as Exhibit 2 and incorporated by reference pursuant to Federal Rule of Procedure 10(c).

44. Mack's EEOC charge is being investigated by the EEOC. The EEOC has not issued a notice of right to sue on that charge to Mack as of the date of the filing of this Complaint.

45. On or about February 22, 2016, Mack (through undersigned counsel) served a timely Notice of Claim on the Town for intentional infliction of emotional distress pursuant to A.R.S. § 12-821.01(A). A true copy of that Notice of Claim is attached infra as Exhibit 3 and incorporated by reference pursuant to Federal Rule of Procedure 10(c).

46. More recently, in May 2016, Patterson made more harassing comments in Mack's presence and in the presence of others, including using the phrase "Let's nigger-rig it" again. Patterson continued, "Oh I shouldn't have said that. But it's just in my nature."

## Demand for Jury Trial

47. Plaintiff Mack demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution, and Federal Rule of Procedure 38(a), (b).

**Relief Requested**

48. Based upon the foregoing, Plaintiff Mack requests judgment and orders granting him the following relief against the Defendants:

### Count One:
### 42 U.S.C. § 1981-Hostile Work Environment Based Upon Race
### (against the Town, Patterson and Davis)

49. Mack repeats and realleges each allegation of this complaint as if fully set forth in this claim.

50. The Town and Patterson and Davis created a hostile work environment in violation of 42 U.S.C. § 1981 based on race by subjecting Mack to unwelcome comments and conduct (including the snake incident) that were sufficiently severe or pervasive to alter the conditions of Mack's work environment.

51. Mack reasonably perceived his working environment at the Town to be hostile and a reasonable man in Mack's circumstances would find such working environment to be abusive or hostile.

52. The Town failed to prevent the hostile work environment, and failed to promptly correct the hostile work environment.

53. Mack's supervisor Patterson created the hostile work environment by engaging in racial slurs and by knowingly allowing Davis to engage in the snake incident.

54. As a direct and proximate result of the conduct by conduct of the Town and the individual Town actors alleged, Mack is entitled to compensatory damages including for suffering a heart attack, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, heart damage, fear, depression, loss of sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship. Mack also incurred medical expenses and had to use significant amounts of paid leave because of the

heart attack. Mack and is reasonably likely to incur more compensatory damages in the future.

55. Injunctive relief should be granted for Mack against the Defendants to prevent further acts of retaliation and discrimination, particularly since these Defendants appear to be oblivious to their duties and liabilities under 42 U.S.C. § 1981, and Mack continues to be employed by and working with these Defendants.

56. The unlawful employment practices complained of were intentional.

57. The unlawful employment practices complained of were done with malice or with reckless indifference to Mack's federally protected rights.

58. Mack seeks a judgment for the following:

   A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

   B. Punitive damages against Defendants Patterson and Davis;

   C. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Mack;

   D. His reasonable attorney's fees and expert fees incurred, pursuant to 42 U.S.C. 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

   E. His taxable costs incurred, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Count Two:
42 U.S.C. § 1981-Retaliation for Reporting a Hostile Work Environment
Based Upon Race
(against the Town, Davis, Patterson, Racette, and Smith)**

59. Mack repeats and realleges each allegation of this complaint as if fully set forth in this claim.

60. The Town, Davis, Patterson, Racette, and Smith violated 42 U.S.C. § 1981 when they retaliated against Mack because he complained of conduct he reasonably believed was unlawful race discrimination in his employment, including when (A) Davis engaged in the snake incident with the knowledge and approval of Patterson to punish Mack for his complaining about Patterson's racial slurs on the job, and (B) by Patterson, Racette, and Smith threatening Mack's employment.

61. As a direct and proximate result of the conduct by conduct of the Town and the individual Town actors, Mack is entitled to compensatory damages including for suffering a heart attack, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, heart damage, fear, depression, loss of sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship. Mack also incurred medical expenses and had to use significant amounts of paid leave because of the heart attack. Mack and is reasonably likely to incur more compensatory damages in the future.

62. Injunctive relief should be granted for Mack against the Defendants to prevent further acts of retaliation and discrimination, particularly since these Defendants appear to be oblivious to their duties and liabilities under 42 U.S.C. § 1981, and Mack continues to be employed by and working with these Defendants.

63. The unlawful employment practices complained of were intentional.

64. The unlawful employment practices complained of were done with malice or with reckless indifference to Mack's federally protected rights.

65. Mack seeks a judgment for the following:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

    B. Punitive damages against Defendants Davis, Patterson, Racette, and Smith;

C.	Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Mack;

D.	His reasonable attorney's fees and expert fees incurred, pursuant to 42 U.S.C. 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), and Local Rule Civil Procedure 54.2; and

E.	His taxable costs incurred, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 U.S.C. § 1920.

### Count Three:
### Federal Civil Rights Act (42 U.S.C. 1983):
### Retaliation for Exercise of First Amendment Right of Free Speech
### Retaliation by Racette and Smith
### (against the Town, Racette, and Smith)

66.	Mack repeats and realleges each allegation of this complaint as if fully set forth in this claim.

67.	The Town, Racette, and Smith violated 42 U.S.C. § 1983 when they retaliated against Mack including by threatening his employment because Mack complained of conduct he reasonably believed was unlawful race discrimination in his employment.

68.	Mack's complaint was expressive conduct that addressed a matter of public concern.

69.	Defendants' adverse actions taken because of the expressive conduct chilled Mack's exercise of First Amendment rights.

70.	Racette and Smith were the final decision making officials in this case, or were delegated such authority or ratified the decision of a subordinate.

71.	As a direct and proximate result of the conduct by conduct of the Town and the individual Town actors, Mack is entitled to compensatory damages including for suffering a heart attack, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, heart damage, fear, depression, loss of

sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship. Mack also incurred medical expenses and had to use significant amounts of paid leave because of the heart attack. Mack and is reasonably likely to incur more compensatory damages in the future.

72. Injunctive relief should be granted for Mack against the Defendants to prevent further acts of retaliation and discrimination, particularly since these Defendants appear to be oblivious to their duties and liabilities under 42 U.S.C. § 1983, and Mack continues to be employed by and working with these Defendants.

73. The unlawful employment practices complained of were intentional.

74. The unlawful employment practices complained of were done with malice or with reckless indifference to Mack's federally protected rights.

75. Mack seeks a judgment for the following:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

    B. Punitive damages against Defendants Racette and Smith;

    C. Injunctive relief to prevent future similar violations of federal statutes and remedy harm done to Mack;

    D. His reasonable attorney's fees and expert fees incurred, pursuant to 42 U.S.C. §1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    E. His taxable costs incurred, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

/ / /

/ / /

## Count Four:
## Federal Civil Rights Act (42 U.S.C. § 1983):
## Retaliation for Exercise of First Amendment Right of Free Speech
## Retaliation by Patterson and Davis
## (Against Town, Patterson, and Davis)

76. Mack repeats and realleges each allegation of this complaint as if fully set forth in this claim.

77. The Town, Davis, and Patterson violated 42 U.S.C. § 1983 by retaliating against Mack including by placing and approving the placement of the snake in Mack's truck and threatening Mack's employment because he complained of conduct he reasonably believed was unlawful race discrimination in his employment.

78. Mack's complaint expressed conduct that addressed a matter of public concern.

79. Defendants' adverse actions taken because of the expressive conduct chilled Mack's exercise of First Amendment rights.

80. Patterson and Davis were the final decision making officials in this case, or were delegated such authority or ratified the decision of a subordinate.

81. As a direct and proximate result of the conduct by conduct of the Town and the individual Town actors, Mack is entitled to compensatory damages including for suffering a heart attack, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, heart damage, fear, depression, loss of sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship. Mack also incurred medical expenses and had to use significant amounts of paid leave because of the heart attack. Mack and is reasonably likely to incur more compensatory damages in the future.

82. Injunctive relief should be granted for Mack against the Defendants to prevent further acts of retaliation and discrimination, particularly since these Defendants

appear to be oblivious to their duties and liabilities under 42 U.S.C. § 1983, and Mack continues to be employed by and working with these Defendants.

83. The unlawful employment practices complained of were intentional.

84. The unlawful employment practices complained of were done with malice or with reckless indifference to Mack's federally protected rights.

85. Mack seeks a judgment for the following:

   A. Compensatory and general damages in an amount to be determined by the trier-of-fact;

   B. Punitive damages against Defendants Patterson and Davis;

   C. Injunctive relief to prevent future similar violations of federal statutes and remedy harm done to Mack;

   D. His reasonable attorney's fees and expert fees incurred, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

   E. His taxable costs incurred, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

## Count Five:
## Intentional Infliction of Emotional Distress
## (against the Town only)

86. Mack repeats and realleges each allegation of this complaint as if fully set forth in this claim.

87. Davis's conduct was "extreme and outrageous" when he placed a snake in Mack's work station with the knowledge and approval of Patterson, causing Mack to have a heart attack.

88. Davis intended to cause or recklessly disregarded the near certainty that such distress would occur because of the conduct.

89. Patterson knew of and approved or authorized Davis's intentional tort (the snake incident), and the Town is vicariously liable for Davis's intentional tort.

90.	Davis's intentional tort occurred within the course and scope of his employment by the Town and thus the Town is liable for Davis's intentional tort pursuant to the doctrine of respondeat superior.

91.	Mack suffered severe emotional distress. As a direct and proximate result of the conduct by conduct of the Town, Mack is entitled to compensatory damages including for suffering a heart attack, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, heart damage, fear, depression, loss of sleep, nightmares, change in demeanor, loss of enjoyment of life, and loss of the love, care, affection, companionship, and other pleasures of the marital relationship. Mack also incurred medical expenses and had to use significant amounts of paid leave because of the heart attack. Mack and is reasonably likely to incur more compensatory damages in the future.

92.	Compensatory and general damages in an amount to be determined by the trier-of-fact; and

A.	His taxable costs incurred, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

B.	For such other and further relief as is proper and just.

Respectfully submitted this 18th this day of July, 2016.

**GILLESPIE SHIELDS DURRANT & GOLDFARB**

By   /s/ Christopher R. Houk
         Christopher R. Houk
         *Attorneys for Plaintiff*

## **Attached Exhibits**

    1.    Letter from Cardiologist Regarding the Cause of the Heart Attack (two pages) (dated 2-18-16).

    2.    EEOC Charge # 540-2016-01136 (filed by Mack against the Town) (two pages) (dated 2-18-16).

    3.    Mack's Notice of Claim Served upon the Town (five pages) (dated February 22, 2016).